**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: Subpoena to Jones Day, in the matter of *Mujezinovic, et al. v. The Trustees of Indiana University, et al.* (S.D. Ind. 1:24-cv-01827-TWP-MG) | Case No. 26-3217 |

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO COMPEL
RULE 30(b)(6) DEPOSITION OF JONES DAY**

Plaintiffs Haris Mujezinovic, Charlie Miller, John Flowers, and Larry Richardson, Jr. ("Plaintiffs"), by counsel and pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 37.2, submit their Brief in Support of their Motion to Compel the Rule 30(b)(6) Deposition of Jones Day.

**INTRODUCTION**

Plaintiffs file this motion in connection with a case pending in the Southern District of Indiana. Plaintiffs served Jones Day with a 30(b)(6) subpoena, the parties met and conferred about Jones Day's objections, and Jones Day refused to produce a witness. Plaintiffs asked Jones Day whether it would agree to litigate this discovery dispute in the Southern District of Indiana, but Jones Day refused. Because Jones Day transacts business within 100 miles of this Court, but not the District Court for the Southern District of Indiana, Plaintiffs have filed the instant motion with this Court. Fed. R. Civ. P. 45(c)(1)(A).

Plaintiffs, former Indiana University ("IU") student-athletes, allege they suffered sexual abuse at the hands of a long-tenured IU physician, Dr. Bradford Bomba, Sr., and that IU was deliberately indifferent to that abuse in violation of Title IX. In response to these allegations, IU issued a press release[1] announcing that is had hired the law firm Jones Day to conduct an

---

[1] https://news.iu.edu/live/news/37882-indiana-university-statement-on-independent-review.

1

"independent" investigation, stating: "To be clear, this is a fully independent and comprehensive investigation that will follow the facts." Several months later, IU publicly published Jones Day's Report online.[2] IU quoted the Report's conclusion in a press release: "Rather, the evidence did not lead us to conclude that Dr. Bomba acted in bad faith or with an improper purpose when performing DREs while conducting thorough and complete PPEs of a college-age student athletes."

Plaintiffs seek to compel targeted deposition testimony about information that Jones Day obtained during its "independent fact investigation." Jones Day has refused to provide any testimony, asserting sweeping privilege objections and declining to produce a Rule 30(b)(6) witness. Plaintiffs do not seek to intrude on privileged communications or counsel's mental impressions. They seek the underlying factual information Jones Day obtained during that investigation—information directly relevant to IU's knowledge, notice, and response. The Court should compel Jones Day to designate and produce a witness or witnesses to testify to the topics identified in the notice and subpoena.

## LOCAL RULE 37.2 STATEMENT

Pursuant to N.D. Illinois Local Rule 37.2, Plaintiffs certify that they have in good faith conferred with counsel for non-party Jones Day in an effort to resolve the issues raised by this motion without court intervention.

Plaintiffs first served a Rule 30(b)(6) subpoena and document request on Jones Day on October 9, 2025, seeking testimony on narrowly tailored topics directed to non-privileged factual information obtained during Jones Day's investigation. (Ex. 1, Subpoena). Jones Day served objections on October 25, 2025. (Ex. 2, Objection to Subpoena). Plaintiffs responded on October

---

[2] https://news.iu.edu/live/news/45439-indiana-university-releases-report-from.

27, 2025, and requested to meet and confer. (Ex. 3, Oct. 27, 2025, Letter).

The parties engaged in multiple meet-and-confer discussions, including calls on November 12, December 9, December 22, and December 30, 2025, and January 8, 2026. Plaintiffs proposed a compromise in writing on January 16, 2026, and followed up on January 27, 2026. (Ex. 4, Jan. 2026 Emails). Receiving no response, Plaintiffs understood that negotiations had reached an impasse.

In an effort to address Jones Day's objections, Plaintiffs served an Amended Rule 30(b)(6) subpoena on February 25, 2026, removing document requests and further narrowing the deposition topics to expressly exclude privileged material. (Ex. 5, Amended Subpoena). Jones Day objected to the Amended Subpoena on March 10, 2026. (Ex. 6, Objection to Amended Subpoena).

Plaintiffs responded on March 11, 2026 (Ex. 7, March 11, 2026, Email), and the parties met and conferred again on March 16, 2026. Later that day, Jones Day confirmed in writing that it "will not produce a witness" and that "no deposition will take place." (Ex. 8, March 16-19, 2026, Emails). Plaintiffs followed up on March 19, 2026, and Jones Day confirmed that it does not intend to file a motion to quash or seek a protective order. *Id.*

## LEGAL STANDARD

The Federal Rules of Civil Procedure permit broad discovery of any nonprivileged matter relevant to a party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). After a good faith effort to resolve a discovery dispute, a party may move to compel where the opposing party has failed to provide complete responses. Fed. R. Civ. P. 37(a); *Chicago Reg'l Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F. Supp. 3d 1044, 1046 (N.D. Ill. 2018).

The party resisting discovery bears the burden of showing why the requested discovery is

improper. *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). Courts have broad discretion to resolve discovery disputes, and "do so by adopting a liberal interpretation of the discovery rules." *Trs. of the Chi. Reg'l Council of Carpenters Pension Fund v. Drive Constr., Inc.*, No. 1:19-cv-2965, 2022 U.S. Dist. LEXIS 114941, *5, at *5 (N.D. Ill. June 29, 2022).

A motion to compel compliance with a subpoena must be brought in the district where compliance is required. Fed. R. Civ. P. 37(a)(2). The Court may transfer a subpoena-related motion to the issuing Court upon consent or a showing of exceptional circumstances. Fed. R. Civ. P. 45(f). If a motion to compel is granted, the Court must award reasonable expenses unless the opposing party's position was substantially justified or other circumstances make an award unjust. Fed. R. Civ. P. 37(a)(5)(A).

## ARGUMENT

### I.  Jones Day Must Produce a Rule 30(b)(6) Witness or Witnesses.

Under Federal Rule of Civil Procedure 30(b)(6), an organization served with a deposition notice must designate one or more witnesses to testify on its behalf regarding the noticed topics. Fed. R. Civ. P. 30(b)(6). Plaintiffs served valid Rule 30(b)(6) subpoenas on October 9, 2025 (Ex. 1) and February 5, 2026 (Ex. 4). Jones Day has not moved to quash or sought a protective order. Instead, it has unilaterally refused to produce any witness based on blanket assertions of privilege.

Jones Day's response is not permissible. A "wholesale refusal to produce a witness to testify about relevant Rule 30(b)(6) topics is not the appropriate way to protect [] privileged information." *Baxter Int'l, Inc. v. Becton, Dickinson & Co.*, No. 17 C 7576, 2019 U.S. Dist. LEXIS 125098, at *22 (N.D. Ill. July 26, 2019) (collecting cases). "Rather, [Jones Day] must produce a knowledgeable witness to testify and then, if any question asked during the deposition ventures into what [Jones Day] claims is privileged territory, [Jones Day]'s counsel is free to object to the

4

particular question at issue, state the asserted privilege, and instruct the witness not to answer on the basis of that privilege." *Id.* at *23. The Court should compel Jones Day to immediately produce Rule 30(b)(6) witnesses prepared to testify regarding the noticed topics.

## II. Jones Day's Knowledge Is Not Categorically Privileged.

Jones Day's blanket assertion of privilege fails for three independent reasons. First, Jones Day acted as an independent fact investigator rather than legal counsel. In the underlying litigation, the law firm Barnes & Thornburg LLC represents IU, not Jones Day. Attorney-led investigations are not categorically privileged. Where, as here, the investigation would have been conducted in the ordinary course of business, the involvement of counsel does not transform facts gathered into privileged material. Second, the subpoena seeks underlying facts derived from Jones Day's non-privileged communications with non-party witnesses, not protected work product. And third, even if privilege applies, it does not allow Jones Day to refuse to comply with Rule 30(b)(6) altogether.

### A. Jones Day Acted as a Fact Investigator, Not Legal Counsel.

IU engaged Jones Day on September 10, 2024, "to conduct an independent investigation into the allegations made against Dr. Bomba and the University." (Ex. 9, Report Excerpts; Ex. 10, Sept. 11, 2024, Press Release; Ex. 11, May 1, 2025, Press Release). IU described the engagement as a "fully independent" review that would "follow the facts" and would include witness interviews, document review, and consultation with experts. (Ex. 9). The Jones Day Report and IU's public statements consistently characterize the engagement as a factual investigation. (Exs. 9-11).

Jones Day's conduct during the investigation confirms that role. In communications with witnesses, Jones Day did not present itself as providing legal advice or acting as counsel to those individuals. Instead, it identified itself as conducting an independent investigation on IU's behalf. For example, Jones Day informed witnesses that it was "not [their] counsel," was "not otherwise

assuming any duties" to them, and that information provided "is not subject to the attorney client privilege" and could be shared with IU or third parties:

> By submitting this email, you confirm your understanding that Jones Day has been retained by Indiana University to conduct an independent investigation of the conduct and practices of Dr. Brad Bomba, Sr., that **Jones Day is not your counsel**, and that **Jones Day is not otherwise assuming any duties to you**. Jones Day will attempt to keep the information you provide confidential, but you acknowledge that **the information you provide is not subject to the attorney client privilege, may be disclosed to Indiana University or other third parties**, or may be used in the scope of our review.

(Ex. 12, Auto-Reply) (emphasis added).

Similarly, Jones Day invited individuals to provide information to assist in a "thorough and fair review." (Ex. 13, Outreach Email). When Jones Day interviewed Plaintiff Charlie Miller (before he became a named class representative), Mr. Miller did not understand the interviewer to be acting as an attorney providing legal advice. (Ex. 14, Miller Dep. 45:6-22). Jones Day's written communications with other potential class members' attorneys similarly identify Jones Day as a "fully independent" factfinder. (Ex. 15, Nov. 4, 2024, Correspondence).

These circumstances reflect that IU engaged Jones Day to conduct a fact investigation, not to provide legal advice. Jones Day did not establish attorney-client relationships with witnesses, and affirmatively disclaimed privilege as to information it collected during the investigation— actions fundamentally inconsistent with privileged communications. Jones Day cannot evade Plaintiffs' subpoena by incorrectly asserting privilege applies to all investigatory materials.

### B. Attorney-Led Fact Investigations Are Not Categorically Privileged.

The attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). The work-product doctrine applies only where the primary purpose of an engagement is to obtain or provide legal advice—not where

6

counsel is performing ordinary investigative or business functions. *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118–19 (7th Cir. 1983).

Courts across the country routinely reject privilege claims where law firms are retained to conduct factual investigations rather than to develop litigation strategy. Recently, the Southern District Court of Ohio held that the law firm of Perkins Coie, which Ohio State University's counsel retained to investigate allegations of sexual misconduct by an OSU sports physician, could not withhold materials wholesale under the attorney-client privilege. The Court reached this conclusion despite OSU's documented potential for litigation because "contemporaneous surrounding circumstances indicate that OSU had a business-related purpose for commissioning the Strauss Investigation and the corresponding Report supported by its underlying documents." *In re Subpoena to Perkins Coie LLP*, No. 2:19-mc-38, 2024 U.S. Dist. LEXIS 83785, at *10-11 (S.D. Ohio May 8, 2024). Although the investigation may have assisted counsel in providing legal advice, that "usefulness" did not transform underlying facts into privileged material. *Id*. at *27.

Courts within this Circuit have reached the same conclusion. In *Wartell v. Purdue University*, the Northern District of Indiana compelled production of materials from an attorney-led investigation where counsel performed "investigative tasks a non-lawyer employee would perform in a less extraordinary case." *Wartell v. Purdue Univ.*, No. 4:13-cv-32, 2014 U.S. Dist. LEXIS 100855, at *10–14 (N.D. Ind. July 24, 2014).

By contrast, privilege applies where a client engages a lawyer to conduct an investigation for the purpose of providing legal advice. In *Sandra T.E. v. South Berwyn School District 100*, the Seventh Circuit held that an attorney's interview materials were protected where the school retained a law firm to investigate and provide legal advice. 600 F.3d 612, 619-20 (7th Cir. 2010). That case did not involve a public report; rather, the firm orally presented its findings at a closed

7

executive session of the Board and delivered a written "Executive Summary" marked "Privileged and Confidential" to the Board. *Id.* at 616.

The weight of authority confirms that the mere involvement of attorneys in an investigation does not render all related communications privileged, particularly where the law firm was retained to conduct a factual investigation rather than to provide legal advice. "Not all documents created or produced by a company can be categorized as protected by work product simply because a company's internal investigation is co-existent with a present or anticipated lawsuit that is the same subject matter of the litigation. Not only must the primary motivating purpose behind the creation of the document or investigative report . . . be to aid in . . . litigation, in order to be deemed protected, the document must also be of a legal nature and primarily concerned with legal assistance; technical information is otherwise discoverable." *Moore v. Lauer*, No. 3:22-cv-50354, 2024 U.S. Dist. LEXIS 12538, at *7-8 (N.D. Ill. Jan. 24, 2024) (citation omitted); see also *Doe v. Phillips Exeter Acad.*, 2016 U.S. Dist. LEXIS 141877 (D.N.H. Oct. 13, 2016) (communications and reports generated by attorney-investigators were not privileged where they did not convey legal advice); *B.L. v. Schuhmann*, No. 3:17-cv-833, 2020 U.S. Dist. LEXIS 199086, at *12–19 (W.D. Ky. Oct. 26, 2020) (same); *Thomas v. Marshall Pub. Sch.*, 690 F. Supp. 3d 941, 952–58 (D. Minn. 2023) (finding no privilege as to communications with witnesses during an attorney-led investigation where the attorney did not present himself as providing legal advice).

Here, Jones Day's engagement aligns with *Perkins Coie* and *Wartell*, not *Sandra T.E.* IU retained Jones Day to conduct a public-facing fact investigation, not to provide legal advice. Accordingly, Jones Day's work is not categorically protected by the attorney-client privilege or work-product doctrine.

Finally, even if the attorney-client privilege applied to the information witnesses provided

to Jones Day, IU unequivocally waived any such protection by publishing the Jones Day Report. A client waives the attorney-client privilege by disclosing the substance of otherwise privileged communications to third parties. See *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (privilege protects confidential communications); *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (voluntary disclosure to a third party waives the privilege). Jones Day summarized its interviews of then-employee Tim Garl, former team physician Dr. Larry Rink, and other current or former team physicians and staff in its Report. (Ex. 9 at 53-60, IU00003535-3542). By publicly releasing a report that describes the information obtained during witness interviews, IU disclosed the substance of those communications. Jones Day cannot now withhold the underlying facts on privilege grounds. For example, Baylor University's communications with its law firm were initially protected by the attorney-client privilege, but "Baylor waived that protection when it repeatedly released findings and conclusions made by Pepper Hamilton." *Doe v. Baylor Univ.*, 320 F.R.D. 430, 437 (W.D. Tex. 2017).

Further, Jones Day's work product objections are fundamentally inconsistent. If IU retained Jones Day to provide legal advice in anticipation of litigation, then IU's decision to publicly disclose the substance of that advice waived any claim of work product protection as to those materials. If, on the other hand, IU retained Jones Day to conduct institutional fact-finding (as IU repeatedly stated in press releases), then Jones Day's work falls outside the scope of the work-product doctrine in the first place. Either way, IU and Jones Day cannot use work-product protection as both a sword and a shield—disclosing select information supporting the Report's findings while preventing Plaintiffs from examining the underlying evidence necessary to test those conclusions. A party "cannot be allowed, after disclosing as much as he pleases, to withhold the remainder." *Harding v. Dana Transp., Inc.*, 914 F. Supp. 1084, 1092–97 (D.N.J. 1996).

### C.  Underlying Facts Are Not Protected Work Product.

Even where privilege or work-product protection applies, those doctrines do not shield underlying facts. The attorney-client privilege protects communications—not facts. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). Nor does the attorney-client privilege apply to an attorney's communications with third-party witnesses—particularly where, as here, Jones Day did explicitly disclaimed any such relationship or promise of confidentiality.

The work-product doctrine is similarly limited. "[T]he work-product doctrine only prevents the disclosure of protected documents or communications . . . not the underlying facts." *Trs. of the Chi. Reg'l Council of Carpenters Pension Fund v. Drive Constr., Inc.*, No. 1:19-cv-2965, 2022 U.S. Dist. LEXIS 114941, at *23 (N.D. Ill. June 29, 2022). Plaintiffs seek non-privileged information—namely, facts Jones Day obtained during its investigation, including information third-party witnesses communicated to Jones Day. That information does not transform into work product simply because Jones Day collected it.

Under Seventh Circuit law, to qualify for work-product protection, "the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation." *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983); *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010). In contrast, "a document prepared for non-litigation purposes receives no work-product protection, even if it reflects legal thinking." *In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2026 U.S. Dist. LEXIS 31684, at *14-15 (N.D. Ill. Feb. 17, 2026).

The party asserting work-product protection must demonstrate that the documents would not have been generated in substantially the same form in the ordinary course of business. *Binks*, 709 F.2d at 1118-19. See also *Stout v. Illinois Farmers Ins. Co.*, 150 F.R.D. 594, 604 (S.D. Ind. 1993) ("If a document or thing would have been created for non-litigation uses regardless of its

intended use in litigation preparation, it should not be accorded work product protection."); *Hankins v. Alpha Kappa Alpha Sorority, Inc.*, 619 F. Supp. 3d 828, 839 (N.D. Ill. 2021) (sorority did not establish that its internal investigation of hazing allegations was performed for the purpose of litigation, and the report would not have been created otherwise).

The circumstances of Jones Day's investigation confirm that neither IU nor Jones Day treated the information Jones Day gathered as confidential legal communications. Jones Day invited third parties to submit information through an intake process and expressly informed them that Jones Day did not represent them, that their communications were not privileged, and that the information could be shared with IU or other third parties. (Ex. 11). Jones Day conducted interviews that involved "general questions" and efforts to obtain "a history" of events. (Ex. 16, Garl Dep. 191:17-192:13). That sort of factual inquiry is not protected simply because Jones Day asked the questions.

Accordingly, even if some portion of Jones Day's work could be characterized as privileged or protected—which Plaintiffs dispute—the underlying facts Jones Day obtained remain discoverable and within the proper scope of Rule 30(b)(6) testimony.

### D. Potential Privilege Does Not Justify Refusing to Testify.

Jones Day asserts that *any* testimony it would provide on the designated topics would be privileged or protected work product. However, even if some portion of Jones Day's knowledge were privileged, Jones Day must still comply with Rule 30(b)(6). A "wholesale refusal to produce a witness to testify about relevant Rule 30(b)(6) topics is not the appropriate way to protect [] privileged information." *Baxter Int'l, Inc. v. Becton, Dickinson & Co.*, No. 17 C 7576, 2019 U.S. Dist. LEXIS 125098, at *22 (N.D. Ill. July 26, 2019) (collecting cases). "Rather, [Jones Day] must produce a knowledgeable witness to testify and then, if any question asked during the deposition ventures into what [Jones Day] claims is privileged territory, [Jones Day]'s counsel is free to object

11

to the particular question at issue, state the asserted privilege, and instruct the witness not to answer on the basis of that privilege." *Id.* at \*23. Jones Day's unilateral refusal to provide a witness is improper, and the Court should compel Jones Day to immediately produce one or more Rule 30(b)(6) witnesses for deposition.

## III. The Requested Testimony Is Proportional and Central to Plaintiffs' Claims.

The testimony Plaintiffs seek is directly relevant and proportional to the needs of this case. See Fed. R. Civ. P. 26(b)(1). The five noticed topics are narrowly tailored to non-privileged fact information central to Plaintiffs' claims.[3] Plaintiffs seek testimony about complaints or concerns about Dr. Bomba, Sr. and Defendant Tim Garl, as well as reports of similar misconduct within IU Athletics. These subjects go to core issues in the litigation, including notice, institutional knowledge, and IU's response to allegations of sexual misconduct perpetrated by a long-tenured team physician on scores of student-athletes.

Jones Day's proportionality objection is not well founded. The subpoena seeks only fact information Jones Day obtained during its investigation. If IU had conducted that investigation internally, Plaintiffs would be asking IU employees these same questions. IU's decision to outsource does not insulate the factual investigation from discovery.

### A. Plaintiffs Seek Information Uniquely Within Jones Day's Knowledge.

The information Plaintiffs seek is uniquely within Jones Day's knowledge and is not duplicative of other sources. Individual witnesses can testify about their own communications, but only Jones Day can testify regarding the universe of information it received during the investigation and the timing and context in which that information was conveyed. For example,

---

[3] Jones Day does not object that Plaintiffs' Rule 30(b)(6) topics lack reasonable particularity or are incapable of being addressed by a prepared witness. (Ex. 6, Objection to Amended Subpoena). Instead, Jones Day's objections rest solely on privilege and burden, confirming that the topics themselves are sufficiently clear and particular.

Jones Day invited anonymous reporting through its intake process. Plaintiffs cannot investigate or test that evidence without first learning that such reports exist and what information was provided. That information is uniquely within Jones Day's knowledge and unavailable from any other source. A Rule 30(b)(6) deposition is an appropriate and efficient mechanism to obtain an organization's collective knowledge regarding these matters.

Likewise, the Jones Day Report is a summary of selected findings. The Report itself expressly acknowledges that it "does not detail all information [Jones Day] collected or analyzed, but instead contains sufficient information to describe relevant facts and support the findings and conclusions contained herein." (Ex. 9 at 54, IU00003501). The Report cannot substitute for testimony regarding what information Jones Day actually obtained, when it was received, and from whom.

Given the centrality of these issues to Plaintiffs' claims, the requested testimony is plainly proportional to the needs of the case.

**IV. Jones Day's FERPA and HIPAA Concerns Do Not Justify Refusing the Deposition.**

Jones Day also objects to Plaintiffs' Rule 30(b)(6) notice based on FERPA and HIPAA. However, Plaintiffs' topics expressly exclude information protected by HIPAA or FERPA. To the extent any particular deposition question would implicate protected information, the appropriate course is to raise a specific objection at that time so the issue can be addressed in context.

HIPAA concerns can be addressed through appropriate confidentiality protections and do not justify refusing to provide testimony altogether. See *Haywood v. Wexford Health Sources, Inc.*, No. 16 CV 3566, 2021 U.S. Dist. LEXIS 104363, at *17 (N.D. Ill. June 3, 2021) (protective order was sufficient to permit disclosure of spreadsheets containing non-party PHI without violating HIPAA).

Similarly, this Court has expressly concluded that "FERPA does not create an evidentiary

privilege . . . documents covered by FERPA are indeed discoverable in the context of a civil action." *Thorsen v. Cmty. Unit Sch. Dist. 300*, No. 20 C 50132, 2022 U.S. Dist. LEXIS 254583, at *23 (N.D. Ill. Sep. 12, 2022) (citation omitted). Perkins Coie made a similar FERPA argument, and the Ohio Southern District Court similarly found that "student witness statements are not governed by FERPA." *In re Subpoena to Perkins Coie LLP*, No. 2:19-mc-38, 2024 U.S. Dist. LEXIS 83785, at *29 (S.D. Ohio May 8, 2024) (citation omitted).

Plaintiffs do not seek medical or educational records. But even if HIPAA or FERPA could arguably apply to some information responsive to a question, that does not render the information non-discoverable. The mere possibility that some questions might implicate privacy concerns does not support a categorical refusal to provide Rule 30(b)(6) testimony.

**V.      For Efficiency Reasons, Plaintiffs Invite This Court to Transfer this Motion to the Southern District of Indiana.**

This Court may transfer this motion to the Southern District of Indiana upon consent of the subpoenaed party or upon a showing of exceptional circumstances. Fed. R. Civ. P. 45(f). Plaintiffs asked Jones Day to consent to litigate this dispute in the Southern District of Indiana where two judicial officers have been hard at work on this case for more than 18 months. Jones Day refused. In the absence of consent, exceptional circumstances warrant transfer here. The Southern District of Indiana is presiding over the underlying action and is already familiar with the parties, the claims, and the discovery disputes concerning the Jones Day investigation. Currently pending before the Southern District of Indiana in the underlying case is a Motion to Compel certain documents from Defendant IU, including communications involving Jones Day and communications about Jones Day's investigation, which IU has asserted are protected by the attorney-client privilege or work product protection. (No. 1:24-cv-01827-TWP-MG, Dkt. 200). Transfer would promote consistency in rulings and avoid duplication of judicial effort.

14

**CONCLUSION**

Plaintiffs do not seek to intrude on protected attorney-client communications or counsel's mental impressions. Rather, Plaintiffs seek access to the unfiltered facts Jones Day gathered during its investigation—information Jones Day selectively summarized in the public Report, but did not fully disclose. Having chosen to publish the results of the investigation, Jones Day and IU cannot use privilege as both a sword and a shield. The discovery rules entitle Plaintiffs to test and evaluate that evidence independently.

**RELIEF REQUESTED**

Plaintiffs respectfully request that the Court order Jones Day to immediately designate and produce for testimony one or more witnesses on the noticed topics and to provide available dates for the deposition within three (3) days of the Court's Order, with the deposition to be completed no later than April 19, 2026.

Plaintiffs also request an award of reasonable expenses incurred in bringing this motion pursuant to Federal Rule of Civil Procedure 37(a)(5). Jones Day's refusal to designate 30(b)(6) witnesses based upon sweeping privilege objections is not substantially justified, and an award of attorney's fees and expenses is warranted.

DATED: March 23, 2026                    Respectfully submitted,

*/s/ Kathleen A. DeLaney*
Kathleen A. DeLaney (ARDC Bar # 6322356)
DELANEY & DELANEY LLC
3646 Washington Blvd.
Indianapolis, IN 46205
Phone: 317-920-0400
Email: kathleen@delaneylaw.net

*Attorney for Plaintiffs and the Putative Class*

15

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on March 23, 2026, a copy of the foregoing document was served by U.S. Certified Mail, postage prepaid, return receipt requested, to the following non-party:

Jones Day
Attn. Highest Officer or Managing Partner
110 North Wacker Drive, Suite 4800
Chicago, IL 60606

The undersigned counsel certifies further that on March 23, 2026, a copy of the foregoing was served via email to the following counsel:

Christopher D. Lee
Daniel R. Kelley
Andrew D. Dettmer
DINSMORE & SHOHL LLP
211 N. Pennsylvania, Suite 1800
Indianapolis, IN 46204
Christopher.Lee@Dinsmore.com
Daniel.Kelley@Dinsmore.com
Andrew.Dettmer@Dinsmore.com

John Maley
Amanda Gallagher
Dylan Pittman
Charity Seaborn
Barnes & Thornburg LLP
11 S. Meridian Street
Indianapolis, IN 46204
john.maley@btlaw.com
amanda.gallagher@btlaw.com
dylan.pittman@btlaw.com
charity.seaborn@btlaw.com

Tracy Stratford
150 West Jefferson, Suite 2100
Detroit, MI 48226
tkstratford@jonesday.com

*/s/ Kathleen A. DeLaney*
Kathleen A. DeLaney